# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| SAVANNAH OUTLET SHOPPES, LLC, | CASE NO. 10-42135-LWD |
| Debtor. | |

# CHAPTER 11 PLAN PROPOSED
# BY SAVANNAH OUTLET SHOPPES, LLC

**July 25, 2011**

**Karen Fagin White, Esquire**
**Brent W. Herrin, Esquire**
**Cohen Pollock Merlin & Small, P.C.**
**3350 Riverwood Parkway**
**Suite 1600**
**Atlanta, Georgia 30339**

**Co-Counsel to Debtor**

**Mark Bulovic, Esquire**
**Bulovic Law Firm, LLC**
**1020 Brian Woods Loop, Suite 5**
**Savannah, Georgia 31410**

**Co-Counsel to Debtor**

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

702033v3

# CHAPTER 11 PLAN

## ARTICLE I.

### INTRODUCTION

**Savannah Outlet Shoppes, LLC**, the Debtor in the above-referenced Bankruptcy Case, hereby proposes and files the following Chapter 11 Plan (the "Plan"). The Plan should be considered in conjunction with the Disclosure Statement, which the Debtor has filed contemporaneously herewith.

## ARTICLE II.

### DEFINITIONS AND RULES OF INTERPRETATION

**2.1   Scope of Definitions and Rules of Interpretation.**

**2.1.1**   For purposes of the Plan, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Article II of the Plan. Any term used in the Plan that is not defined herein, but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**2.1.2**   The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules, as appropriate.

**2.2   Definitions.**

**2.2.1**   *Administrative Claim* shall mean an Allowed Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to Section 507(a) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under Sections 330(a)

or 331 of the Bankruptcy Code, (c) the post-Effective Date costs and expenses of administering the Estate, and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

**2.2.2**  *Allowed Claim* shall mean a Claim against Debtor to the extent that such Claim is unpaid and (a) has been allowed by a Final Order of the Court; or (b) is (i) listed in the Debtor's Schedules, other than a Claim that is Scheduled at zero or unknown amount or as disputed, contingent, or unliquidated, or (ii) evidenced by a proof of claim that has been filed with the Court on or before the Bar Date or deemed filed pursuant to any Final Order of the Court or under applicable law, and as to which (A) no objection to its allowance has been timely filed, or (B) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order; or (c) is allowed pursuant to the terms of this Plan. Notwithstanding any other provision of the Plan, the term "Allowed Claim" shall not include any Claim held by a creditor against which the Debtor has asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall not include any interest accrued after the Petition Date (on any Claim other than a Secured Claim) or any penalty.

**2.2.3**  *Allowed Claim of Comm 2006-C8* shall mean the total claims, secured and unsecured, owed to Comm 2006-C8 by Debtor, estimated in the amount of $9,533,747.27.

**2.2.4**  *Allowed Claim of U.S. Bank* shall mean the total claims, secured and unsecured, owed to U.S. Bank by Debtor, estimated in the amount of $600,000.00.

**2.2.5**  *Assets* shall mean all property of the Debtor and the Estate as defined in Section 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any Avoidance Actions or other Causes of Action that the Debtor or the Estate may have as of the Effective Date or any time thereafter.

**2.2.6**  *Avoidance Actions* shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of the Debtor or its Estate under the Bankruptcy Code, including all claims, rights and causes of action arising under Section 510 or under any of Sections 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date.

**2.2.7**  *Ballot* shall mean each of the voting forms that will be distributed by Order of the Court to holders of Claims in Classes that are impaired and entitled to vote under the Plan.

702033v3                      Page 3 of  23

**2.2.8**  *Bankruptcy Case or Case* shall mean, the Chapter 11 bankruptcy case of the Debtor now pending before the Court.

**2.2.9**  *Bankruptcy Code* or *Code* shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended and applicable to this Case.

**2.2.10**  *Bankruptcy Rules* shall mean: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, (b) the Federal Rules of Civil Procedure, and (c) the Local Rules of the Court, all as amended from time to time and as applicable to this Case or proceedings therein.

**2.2.11**  *Bar Date* shall mean the last date set by the Court to file proofs of claim asserting a pre-petition unsecured claim.

**2.2.12**  *Business Day* shall mean any day, excluding Saturdays, Sundays, and legal holidays, on which commercial banks are open for business in Savannah, Georgia.

**2.2.13**  *Cash* shall mean legal tender of the United States of America.

**2.2.14**  *Causes of Action* shall mean any and all of the Debtor's and the Estate's claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments, whether asserted or unasserted, liquidated or unliquidated, based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions, and any claims acquired following the Petition Date, including without limitation all such Causes of Action described in the Disclosure Statement.

**2.2.15**  *Claim* shall mean a claim against the Debtor or its Estate, as defined in Section 101(5) of the Bankruptcy Code.

**2.2.16**  *Claims Litigation* shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate.

**2.2.17**  *Class* shall mean any class into which Claims or Interests are classified pursuant to this Plan.

702033v3

**2.2.18**   *Comm 2006-C8* shall mean Comm 2006-C8 Gateway Boulevard Limited Partnership.

**2.2.19**   *Confirmation Date* shall mean the date on which the Confirmation Order is entered on the docket of the Court.

**2.2.20**   *Confirmation Hearing* shall mean the hearing on confirmation of the Plan, held pursuant to Section 1128 of the Bankruptcy Code.

**2.2.21**   *Confirmation Order* shall mean the Order entered by the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**2.2.22**   *Court* or *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Southern District of Georgia or, in the event such Court ceases to exercise jurisdiction over this Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over this Chapter 11 Case in lieu of the United States Bankruptcy Court for the Southern District of Georgia.

**2.2.23**   *Debtor* shall mean Savannah Outlet Shoppes, LLC, inclusive of the Reorganized Debtor.

**2.2.24**   *Designated Notice* means notice and an opportunity for a hearing as defined in section 102(a) of the Bankruptcy Code, with notice limited to Debtor, counsel for Debtor, the United States Trustee and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Court and serve a copy of such notice on counsel to the Debtor.

**2.2.25**   *Disallowed Claim* shall mean (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court; (b) a Claim that has been listed in the Schedules at zero or unknown amount or as contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law.

**2.2.26**   *Disputed Claim* shall mean a Claim as to which an objection has been or may be timely filed by a party-in-interest with standing and which objection has not been withdrawn or determined by a Final Order and which is not the subject of a compromise and settlement as described in this Plan. Disputed Claims shall

also include any Claim held by a creditor against which the Debtor has asserted a claim that has the effect, under Section 502(d) of the Bankruptcy Code, of precluding a Distribution with respect to such Claim.

**2.2.27** *Distribution* shall mean a distribution or payment under the Plan to the holders of Allowed Claims.

**2.2.28** *Effective Date* shall mean the first Business Day occurring at least thirty (30) days after the entry of the Confirmation Order, provided that the Confirmation Order has become a Final Order (as defined herein).

**2.2.29** *Estate* shall mean the bankruptcy estate created by the commencement of the Debtor's Chapter 11 case, both prior to and following the Confirmation Date.

**2.2.30** *Final Order* shall mean an Order or Judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which Order or Judgment the time to appeal, petition for certiorari, or seek re-argument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for re-argument, review or rehearing was timely filed or, if timely filed, the Order or Judgment has been affirmed by the highest court to which the Order or Judgment was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further re-argument or rehearing has expired.

**2.2.31** *Interests* shall mean the equity membership interests in Savannah Outlet Shoppes, LLC, held by Fusco Properties, LLC; Carlo Fusco, Sr.; CK Fusco Properties, LLC; GGC, LLC; Net Worth, LLC; Anthony Digati; and Savannah Outlet Shoppes Management Company, LLC.

**2.2.32** *Knudsen Settlement* shall mean the amount of proceeds remaining from the settlement between the Debtor and Robert E. Knudsen pursuant to the Debtor's Motion for Authority to Compromise and Settle Preference and Other Claims Against Robert E. Knudsen [Doc. No. 87] and the Order Regarding Motion for Authority to Compromise and Settle Preference and Other Claims Against Robert E. Knudsen [Doc. No. 104].

**2.2.33** *Loan Agreement* shall mean that certain loan agreement dated September 29, 2006 by and between General Electric Capital Corporation, as Collateral Agent (and its successors and assigns) for the benefit of the holder or holders of the A Note and the B Note and their respective successor and assigns,

as the lender (of which Comm 2006-C8 and U.S. Bank are the successors in interest), and the Debtor, as borrower.

**2.2.34** *New Value Investment* shall mean the amount paid for the purchase of the new equity membership interests in the Reorganized Debtor pursuant to Section 5.1 of the Plan in the amount of one hundred thousand and 00/100 dollars ($100,000.00).

**2.2.35** *Other Priority Claim* shall mean a Priority Claim other than an Administrative Claim and a Priority Tax Claim.

**2.2.36** *Petition Date* shall mean October 4, 2010, the date on which the Debtor filed its Chapter 11 case.

**2.2.37** *Plan* shall mean this Chapter 11 Plan, as it may be modified or amended from time to time pursuant to Section 1127 of the Bankruptcy Code and Article X of the Plan.

**2.2.38** *Priority Claim* shall mean an Allowed Claim entitled to priority pursuant to Sections 507(a)(2) through and including 507(a)(10), excluding 507(a)(8), of the Bankruptcy Code.

**2.2.39** *Priority Tax Claim* shall mean an Allowed Claim entitled to priority pursuant to Sections 507(a)(8) of the Bankruptcy Code, including the Savannah Festival Outlet Center Ad Valorem Tax Claims.

**2.2.40** *Reorganized Debtor* shall mean Savannah Outlet Shoppes, LLC which shall be owned 100% by Blue Skies of Savannah, LLC after entry of the Confirmation Order and on the Effective Date of the Plan.

**2.2.41** *Savannah Festival Outlet Center* shall mean that certain improved real property consisting of four (4) tracts of land owned by Debtor lying and being in the 7th General Militia District, Chatham County, Georgia, and being more particularly described on that certain ALTA/ACSM Land Title Survey prepared by James M. Sims, Georgia Registered Land Surveyor No. 2280, of Hussey, Gay, Bell & DeYoung, dated May 3, 1988, as revised February 27, 1989, August 27, 1997, and September 25, 1997, said property having an address of 11 Gateway Boulevard South, Savannah, Georgia 31419, according to the present system of numbering in Chatham County, Georgia, the same being security for the debt owed to Comm 2006-C8, the first lien holder, and for the debt owed to U.S. Bank, the second lien holder. See Exhibit A to the Disclosure Statement for the property description.

**2.2.42** *Savannah Festival Outlet Center Ad Valorem Tax Claims* shall mean all ad valorem taxes assessed and due and owing on the Petition Date by any state, county or city government against the Savannah Festival Outlet Center and against any other assets of Debtor in which Comm 2006-C8 and U.S. Bank hold valid and perfected security interests.

**2.2.43** *Scheduled* shall mean, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest, as set forth in the Debtor's Schedules.

**2.2.44** *Schedules* shall mean the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, all as amended, filed on or about October 18, 2010.

**2.2.45** *Secured Claim* shall mean an Allowed Claim secured by a lien on property of the Estate to the extent of the value, as of the Effective Date, of such lien as determined by a Final Order of the Court pursuant to Section 506 of the Bankruptcy Code, or as otherwise agreed in writing by the Debtor and the holder of such Allowed Claim.

**2.2.46** *Unclaimed Property* means any funds payable to holders of Claims which are unclaimed.

**2.2.47** *Unsecured Claim* shall mean an Allowed Claim that is not an Administrative Claim, a Priority Claim, an Other Priority Claim, a Secured Claim, a Priority Tax Claim or a Savannah Festival Outlet Center Ad Valorem Tax Claim.

**2.2.48** *U.S. Bank* shall mean U.S. Bank National Association, as trustee for the registered holders of Mezz Cap Commercial Mortgage Trust 2006-C4, Commercial Mortgage Pass-Through Certificates, Series 2006-C4.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1    Introduction.**

**3.1.1**   All Claims and Interests in the Bankruptcy Case are classified in the Classes below. Notwithstanding any other provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the

extent that such Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

**3.1.2**   Under the provisions of Section 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in Sections 507(a)(2) [administrative expenses, etc.], 507(a)(3) [so-called "gap" claims] and 507(a)(8) [tax claims] may not be designated by the Debtor as being in particular classes. Notwithstanding this prohibition of classification, these Claims are nevertheless treated in Article IV of this Plan.

**3.2     Classification.**  Claims and Interests are classified as follows:

**Class 1 - General Unsecured Claims.**  Class 1 will consist of all  Unsecured Claims other than Claims held by Insiders.

**Class 2 - Secured Claim of Comm 2006-C8.**  Class 2 consists of the Secured Claim of Comm 2006-C8.

**Class 3 - Secured Claim of U.S. Bank.**  Class 3 consists of the Secured Claim of U.S. Bank.

**Class 4 - Equity Security Interests and Insider Claims.**   Class 4 shall consist of the equity membership interests of Fusco Properties, LLC; Carlo Fusco, Sr.; CK Fusco Properties, LLC; GGC, LLC; Net Worth, LLC; Anthony Digati; and Savannah Outlet Shoppes Management Company, LLC, and all Insider Claims, as defined by the Bankruptcy Code.

## ARTICLE IV.

## TREATMENT AND IMPAIRMENT OF CLAIMS, <u>INTERESTS AND PRIORITY CLAIMS</u>

The treatment and impairment of each of the classes of Claims and  Interests set forth in Article III and the  treatment and impairment of Priority Claims, are described as follows:

**4.1     Administrative Claims.**

**4.1.1 Treatment.**  Except as may otherwise be agreed between the Debtor and the holder of an Administrative Claim, and except for Ordinary Course Administrative Claims which shall be paid in the normal course of the Reorganized Debtor's business and within normal business terms, the Debtor will pay all

Administrative Claims that are allowed as of the Effective Date in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable. Subsequent to the Effective Date, the Debtor will pay each Administrative Claim that becomes allowed following the Effective Date in Cash in full as soon as reasonably practicable after the date the Claim is allowed.

**4.1.2 Impairment.**   Administrative Claims are not impaired by the Plan.

**4.2   Priority Tax Claims.**

**4.2.1 Treatment.**

**4.2.1.1** To the extent that any Priority Tax Claims have not been satisfied prior to the Effective Date, the Debtor will pay all such remaining Priority Tax Claims in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date.

**4.2.1.2** As to any Priority Tax Claim not paid in full on the Effective Date, the holder of such Priority Tax Claim shall also be paid regular quarterly installment payments which shall include an amount of interest and at a rate of interest ordered by the Court (or agreed by the holder and the Debtor) as being necessary to assure the holder of the Priority Tax Claim the full value of the Priority Tax Claim, pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code,

**4.2.1.3** To the extent that any Priority Tax Claim is allowed after the Effective Date, it will be paid in full in Cash after the Claim is allowed or as soon thereafter as is reasonably practicable, or, at the sole discretion of the Debtor as soon thereafter as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date by quarterly installment payments, including interest calculated as set forth above.

**4.2.2 Impairment.**  Priority Tax Claims are not impaired by the Plan.

**4.3   Other Priority Claims.**

**4.3.1 Treatment.**

**4.3.1.1** Debtor knows of no other Claims entitled to priority under Section 507 which are not Administrative Claims or Priority Tax Claims.  To the extent there are such claims and, except as may otherwise be agreed between the

702033v3

Debtor and the holder of an Other Priority Claim, the Debtor will settle and satisfy all such Claims that are Allowed as of the Effective Date by paying to the holder thereof the amount of the Allowed Claim in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable.

4.3.1.2  To the extent that any Other Priority Claim is allowed after the Effective Date, it will be paid in full in Cash after the Claim is allowed or as soon thereafter as is reasonably practicable.

4.3.2  **Impairment.**  Other Priority Claims are not impaired by the Plan.

## 4.4    Class 1 - General Unsecured Claims.

4.4.1    **Treatment.**   The holders of Unsecured Claims in Class 1 shall be settled and satisfied in full as follows:

4.4.1.1  Each claimant whose Unsecured Claim becomes an Allowed Claim shall be paid one-hundred percent of its Allowed Claim in two separate equal installments with the first installment being paid on the Effective Date and the second installment being paid on the sixtieth (60th) day following the Effective Date.  No interest shall be paid on any Unsecured Claim.

4.4.1.2   Under no circumstances shall any claimant be paid more than one-hundred percent (100%) of its Allowed Claim.

4.4.2   **Impairment.**  Class 1 is impaired by the Plan.

## 4.5  Class 2 - Secured Claim of Comm 2006-C8.

4.5.1    **Treatment.**   The Allowed Claim of Comm 2006-C8, the Class 2 Claimant, shall be settled and satisfied in full as follows:

4.5.1.1   On the Effective Date, Debtor shall pay to Comm 2006-C8 fifty percent (50%) of the New Value Investment, plus all amounts remaining of the Knudsen Settlement after the payment of all Allowed Claims (other than the Allowed Claim of Comm 2006-C8 and the Allowed Claim of U.S. Bank) under the Plan, including Administrative Claims, plus all amounts of cash collateral of Comm 2006-C8 held by Debtor on the Effective Date.  The amounts paid under this Section 4.5.1.1 shall reduce the Allowed Claim of Comm 2006-C8.

702033v3                          Page 11 of  23

**4.5.1.2**   After the reduction of the Allowed Claim of Comm 2006-C8 as provided in Section 4.5.1.1, the remaining amount of the Allowed Claim of Comm 2006-C8 (the "Remaining Secured Claim") shall be paid as follows:  Debtor will pay to Comm 2006-C8 monthly principal and interest payments on the Remaining Secured Claim amortized over a twenty-five (25) year period on the fifteenth (15th) day of each month following the Effective Date.   All unpaid amounts of the Remaining Secured Claim and accrued interest on the Remaining Secured Claim shall be paid in full on the tenth (10th) anniversary of the Effective Date.

**4.5.1.3**   All amounts paid by the Debtor, and that have not been distributed to the Debtor or on the Debtor's behalf, to Comm 2006-C8 or its predecessor pursuant to Section 2.4 of the Loan Agreement, shall remain as a reserve as required under Section 2.4 of the Loan Agreement.   No additional payments shall be made pursuant to Section 2.4 of the Loan Agreement.

**4.5.2 Other Provisions Affecting the Secured Claim of Comm 2006-C8.**

**4.5.2.1 Security Interest Related to the Savannah Festival Outlet Center.**   Comm 2006-C8 shall retain its pre-petition security interest related to the Savannah Festival Outlet Center and retain all of its state law rights related thereto until such time as the Remaining Secured Claim is paid in full, with interest as provided in this Plan.  Once the Remaining Secured Claim is paid in full, with interest as provided in this Plan, Comm 2006-C8's security interest shall be terminated in its entirety.

**4.5.2.2 Insurance and Taxes.** The Reorganized Debtor shall maintain adequate insurance on the Savannah Festival Outlet Center naming Comm 2006-C8 as loss-payee related to the same.  Further, the Reorganized Debtor shall continue to pay and escrow with Comm 2006-C8 all post-petition *ad valorem* taxes and insurance premiums related to Savannah Festival Outlet Center and Comm 2006-C8 shall pay such post-petition *ad valorem* taxes and insurance premiums in the ordinary course, including any *ad valorem* taxes assessed or due in 2011.

**4.5.2.3 Interest.**   The interest rate on the Remaining Secured Claim shall be fixed at five and twenty-five one hundredths percent (5.25%) per annum for the first thirty-six (36) months following the Effective Date and thereafter each month's per annum interest rate shall be the Wall Street Journal Prime Rate of interest as published by the Wall Street Journal on the first Business Day of each month plus two percent (2%), per annum.

702033v3                                 Page 12 of  23

**4.5.2.4 No Pre-Payment Penalty.** There shall be no pre-payment penalty for early payoff of principal or interest.

**4.5.2.5 No Excess Payment.** In no event shall Comm 2006-C8 receive more than the amount of the Allowed Claim of Comm 2006-C8, plus interest as provided in this Plan.

**4.5.2.6 Notice of Default and Cure Period.** Should Comm 2006-C8 allege that the Reorganized Debtor has defaulted under this Plan, with respect to Comm 2006 C-8's Class 2 Claim, Comm 2006-C8 shall notify the Reorganized Debtor in writing via the notice addresses provided in Section 13.3 herein with a courtesy copy to: Karen Fagin White, Esq., kfwhite@cpmas.com; and Brent W. Herrin, Esq., bherrin@cpmas.com.  The Reorganized Debtor shall have 14 days from the date of the mailing of the notice to cure the default.

**4.5.3 Impairment.**  Class 2 is impaired by the Plan.

**4.6  Class 3 - Secured Claim of U.S. Bank.**

**4.6.1  Treatment.**  The Allowed Claim of U.S. Bank, the Class 3 Claimant, shall be settled and satisfied in full as follows:

**4.6.1.1**  Debtor will pay to U.S. Bank monthly interest payments on the Allowed Claim of U.S. Bank on the fifteenth (15th) day of each month following the Effective Date.  All unpaid amounts of the Allowed Claim of U.S. Bank and accrued interest on the Allowed Claim of U.S. Bank shall be paid in full on the tenth (10th) anniversary of the Effective Date.

**4.6.2 Other Provisions Affecting the Secured Claim of U.S. Bank.**

**4.6.2.1 Security Interest Related to the Savannah Festival Outlet Center.**  U.S. Bank shall retain its pre-petition security interest (subordinated to the rights of security interest of Comm 2006-C8) related to the Savannah Festival Outlet Center and retain all of its state law rights related thereto until such time as the Allowed Claim of U.S. Bank is paid in full, with interest as provided in this Plan. Once the Allowed Claim of U.S. Bank is paid in full, with interest as provided in this Plan, U.S. Bank's security interest shall be terminated in its entirety.

**4.6.2.2 Interest.**  The interest rate on the Allowed Claim of U.S. Bank shall be fixed at twelve and seventy-five one hundredths percent (12.75%) per annum.

702033v3

**4.6.2.3 No Pre-Payment Penalty.** There shall be no pre-payment penalty for early payoff of principal or interest.

**4.6.2.4 No Excess Payment.** In no event shall U.S. Bank receive more than the amount of the Allowed Claim of U.S. Bank, plus interest as provided in this Plan.

**4.6.2.5 Notice of Default and Cure Period.** Should U.S. Bank allege that the Reorganized Debtor has defaulted under this Plan, with respect to U.S. Bank's Class 3 Claim, U.S. Bank shall notify the Reorganized Debtor in writing via the notice addresses provided in Section 13.3 herein with a courtesy copy to: Karen Fagin White, Esq., kfwhite@cpmas.com; and Brent W. Herrin, Esq., bherrin@cpmas.com. The Reorganized Debtor shall have 14 days from the date of the mailing of the notice to cure the default.

**4.6.3 Impairment.** Class 3 is impaired by the Plan.

**4.7 Class 4 - The Equity Membership Interests of Fusco Properties, LLC; Carlo Fusco, Sr.; CK Fusco Properties, LLC; GGC, LLC; Net Worth, LLC; Anthony Digati; and Savannah Outlet Shoppes Management Company, LLC, and Claims Held by Insiders ("Insider Claims").**

**4.7.1   Treatment.** As of the Effective Date, all Interests shall be deemed cancelled and rendered null and void. Holders of Interests shall not receive or retain any property under the Plan on account of such Interests, and no distributions or dividends will be paid with respect to the Interests. Insider Claims shall not receive any property or distributions under the Plan on account of such Claims.

**4.7.2 Impairment.** Class 4 is impaired by the Plan. Holders of Interests and Insider Claims are not entitled to vote to accept or reject the Plan and Class 4 is deemed to have rejected the Plan.

## ARTICLE V.

**5.1 New Equity Membership Interests.** On the Effective Date, Blue Skies of Savannah, LLC will purchase 100% of the membership interests of the Reorganized Debtor in an amount as specified in Article VI herein. Giuseppe Fusco, an owner of Fusco Properties, LLC; GGC, LLC; and Savannah Outlet Shoppes Management Company, LLC, each a current member of the Debtor, and Carlo Fusco, Jr., an owner of CK Fusco Properties, LLC; and GGC, LLC, each a current member of the Debtor, will purchase all of the equity membership interests in Blue

702033v3

Skies of Savannah, LLC on or before the Effective Date by contributing to Blue Skies of Savannah, LLC one hundred thousand and no/100 dollars ($100,000.00).

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1  Funding of Plan.**  The distributions contemplated by this Plan shall be made through (a) the use of earnings and revenues of the Debtor and the Reorganized Debtor during the pendency of the Case and following the Effective Date, including without limitation the cash collateral of Comm 2006-C8, which is subject to the Allowed Claim of Comm 2006-C8 until such claim is paid in full pursuant to this Plan; (b) the purchase of new equity membership interests in the Reorganized Debtor by Blue Skies of Savannah, LLC in a total amount of $100,000.00; and (c) the utilization of the sums remaining from the Knudsen Settlement.

**6.2  Settlement of Claims.**  Debtor shall be authorized to resolve objections to Claims without notice or further order of the Court.

**6.3  Exclusive Right to Modify Plan.**  Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to, or modifications of, the Plan until and including the Confirmation Date.

**6.4  Effectuating Documents; Further Transactions.**  Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE VII.

## ACCEPTANCE OR REJECTION OF THE PLAN

**7.1  Classes Entitled to Vote.**  Each impaired Class shall be entitled to vote to accept or reject the Plan.  Each unimpaired Class of Claims shall be deemed to have accepted the Plan, and shall not be entitled to vote to accept or reject the Plan.

**7.2  Claim Designation.**  Debtor reserves the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Claimholder whose vote on the Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

# ARTICLE VIII.

## PROVISIONS REGARDING DISTRIBUTIONS

**8.1  Date of Distributions to Creditors.**   Payments to holders of Allowed Claims shall be paid as provided in Article IV of this Plan.

**8.2   Interest on Claims.**  Except as provided in a Final Order entered in the Bankruptcy Case, (a) no holder of any Claim other than, as stated in Article IV,  the holders of a Priority Tax Claim, Class 2 Claim, and Class 3 Claim, shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**8.3  Method of Payment.**  The Reorganized Debtor shall act as the Disbursing Agent under the Plan for all Plan payments.  All payments made pursuant to this Plan shall be in Cash or by any means reasonably selected by Debtor, including check or wire transfer.

**8.4  Unclaimed Property.**

**8.4.1**  Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property and (d) checks (and the funds represented thereby) which are not mailed due to the lack of required tax identification information, but only following two mailed requests for this tax identification information.

**8.4.2**   For a period of the later of one year following the first Distribution to a Class of Claims or 180 days after a Distribution is made to a claimant on account of which Unclaimed Property first results (said period being hereinafter referred to as the "Claiming Period"), Unclaimed Property shall be held solely for the benefit of the holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the holder of an Allowed Claim shall be released and delivered to such holder upon presentation of proper proof by such holder of its entitlement thereto.

702033v3                                 Page 16 of  23

**8.4.3**  In the event that there is Unclaimed Property with regard to any Claim, Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the holder of such Claim has expired, retain all subsequent Distributions due with regard to such Claim.

**8.4.4**  After the Claiming Period with regard to such holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied; provided, however, that the Claiming Period may be extended for the holder of any Allowed Claim by agreement between the Claimant and Debtor.  At the end of the Claiming Period, the holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto and the Unclaimed Property shall become the property of the Reorganized Debtor.

**8.4.5**  All parties entitled to participate in Distributions under this Plan shall be required to notify the Debtor in writing of any change in the address to which Distributions are to be sent.

**8.4.6**  These provisions shall apply without regard to any applicable non-bankruptcy laws with respect to unclaimed property.

**8.5  Rounding.**  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment made by the Reorganized Debtor may reflect a rounding of such fraction down to the nearest whole cent.

## ARTICLE IX.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1 Assumption**. All of the Debtor's executory contracts and unexpired leases that have not been previously assumed or rejected shall be deemed assumed as of the Effective Date.

**9.2 Classification of Claims.**  Allowed Claims arising out the rejection of executory contracts or unexpired leases shall be Class 1 Claims.

702033v3

# ARTICLE X.

## RETENTION OF JURISDICTION

Until the Case is closed, the Court shall retain jurisdiction over all matters arising out of or relating to the Case, including, but not limited to, the following matters:

**10.1**  To determine the allowance or classification of Claims or Interests under this Plan and to determine any objections thereto;

**10.2**  To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan;

**10.3** To determine all applications for allowance of compensation or reimbursement of expenses;

**10.4**  To determine any other request for payment of Administrative Expenses;

**10.5**  To resolve any dispute regarding the implementation or interpretation of this Plan;

**10.6**  To determine any and all motions pending on Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

**10.7**  To determine all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in this Court on or initiated after the Effective Date;

**10.8**  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**10.9**  To modify the Plan pursuant to Section 1127 of the Code, or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purpose;

**10.10**  To enter an order or final decree closing the Case;

**10.11**  To determine matters under Section 505 of the Code relating to any tax for which the Reorganized Debtor may be liable;

**10.12**  To consider and act on the compromise and settlement of any claim against the Debtor or Debtor-in-Possession or its Estate;

**10.13**  To determine all questions and disputes regarding title to the assets of the Debtor, Debtor-in-Possession, the Estate or the Reorganized Debtor; and

**10.14**  To construe, enforce and resolve all questions and disputes relating to employment agreements existing or approved by the Court at or prior to Confirmation.

## ARTICLE XI

### EFFECTIVE DATE OF THE PLAN

**11.1  Effective Date.**  This Plan shall take effect on the Effective Date.

## ARTICLE XII

### CRAM-DOWN

**12.1**  Debtor hereby requests confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan.

## ARTICLE XIII.

### MISCELLANEOUS

**13.1  Headings.**  The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**13.2  Binding Effect.**  The Plan shall be legally binding upon and inure to the benefit of the Debtor, the Estate, the holders of Claims, the holders of Interests, and their respective successors and assigns.

702033v3

**13.3  Notices.**  Any notice required or permitted to be provided to the Debtor or Reorganized Debtor, under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

**The Debtor:**
Savannah Outlet Shoppes, LLC
c/o Giuseppe Fusco
655 Adirondack Lane
Claremont, California 91711

*with a copy to:*

Karen Fagin White, Esquire
Brent W. Herrin, Esquire
Cohen Pollock Merlin & Small, P.C.
3350 Riverwood Parkway
Suite 1600
Atlanta, Georgia 30339

**The Reorganized Debtor:**

Blue Skies of Savannah, LLC
c/o Giuseppe Fusco
655 Adirondack Lane
Claremont, California 91711

*with a copy to:*

Karen Fagin White, Esquire
Brent W. Herrin, Esquire
Cohen Pollock Merlin & Small, P.C.
3350 Riverwood Parkway
Suite 1600
Atlanta, Georgia 30339

**13.4  Prepayment.**  Unless the Plan or the Confirmation Order otherwise provides, the Reorganized Debtor shall have the authority to prepay, without penalty, all or any portion of an Allowed Claim at any time.

702033v3

**13.5  Amendments and Modifications.**  This Plan may be altered, amended or modified by Debtor at any time, subject, however, to Section 1127 of the Code.  This Plan may not be altered, amended or modified without the written consent of Debtor. Debtor may withdraw this Plan at any time.

**13.6  Retention of Property of the Estate.**  Except to the extent the same is disposed of in accordance with the provisions of this Plan, the Reorganized Debtor shall retain all of the property of the estate within the meaning of Section 541 of the Code.

**13.7  Discharge.**  The Reorganized Debtor shall receive a discharge of any indebtedness owed to any of its creditors for which payment is not provided in this Plan and to the full extent authorized in Section 1141(d) of the Code.

**13.8  Severability.**  If any section[s] or provision[s] of this Plan is found to be contrary to law or unenforceable, then at the option of Debtor, such section[s] or provision[s] shall be deemed no longer a part of this Plan.

**13.9  Retention of and Compensation to Insiders.**  As stated herein, certain of Debtor's current members will purchase equity membership interests in the Reorganized Debtor.  Further, Giuseppe Fusco, the managing member of Savannah Outlet Shoppes Managment Co. , LLC, which is the managing member of the Debtor, will act as the sole Manager of the Reorganized Debtor.  None of the Insiders named herein will receive compensation from the Reorganized Debtor pursuant to the terms of the Plan.

**13.10  Objections to Claims and Interests.**  All objections to any claim or interest shall be filed by the Debtor or other party in interest no later than sixty (60) days after the Effective Date.

**13.11  Applications for Compensation of Professional Persons.**  Except with respect to requests for compensation for services performed on and after Confirmation, each Person retained or requesting compensation in the Case, pursuant to Section 327, 328, 330, 331, 503(b) or 1113 of the Code, shall be entitled to file an application for allowance of final compensation and reimbursement of expenses in the Case until not later than thirty (30) days after the Effective Date. Objections to each such application may be filed on or before the twentieth day thereafter.

**13.12  Applications for Payment of Administrative Claims.**  Except with respect to requests for payment of Administrative Claims arising on and after Confirmation,

702033v3

each Person holding an Administrative Claim shall be entitled to file an application for allowance and payment of the same in the Case until not later than thirty (30) days after the Effective Date.  Objections to each such application may be filed on or before the twentieth day thereafter.

**13.13    Payment of Compensation to Professional Persons for Services Rendered and Administrative Claims after Confirmation.**  Compensation and reimbursement of expenses earned and incurred by professionals performing services for the Reorganized Debtor, as well as Administrative Claims, arising after Confirmation shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation, reimbursements of expenses, or payment of administrative expenses shall be necessary or required unless a dispute arises in regard thereto; in the event of any such dispute, the same shall be resolved by the Court after notice and hearing.

**13.14 U.S. Trustee Fees.**  The Debtor and the Reorganized Debtor, as appropriate, shall cause to be paid any and all fees of the Office of the United States Trustee as and when such fees become due.

**[SIGNATURES ON THE FOLLOWING PAGE]**

702033v3

Respectfully submitted this 25th day of July, 2011.

**Savannah Outlet Shoppes, LLC**
Debtor

By:   Savannah Outlet Shoppes
       Management Company,
       LLC, its Managing Member


By:   /s/ Giuseppe Fusco
       Giuseppe Fusco, Managing
       Member of Savannah Outlet
       Shoppes Management
       Company, LLC

By:   /s/ Karen Fagin White
       Karen Fagin White
       Georgia Bar No.: 754450
       Brent W. Herrin
       Georgia Bar No.: 614753
       Mark Bulovic
       Georgia Bar No.: 094525


**Cohen Pollock Merlin &
Small, P.C.**
Co-Counsel to Debtor
3350 Riverwood Parkway
Suite 1600
Atlanta, Georgia  30339
Telephone:  (770) 858-1288
Facsimile:  (770) 858-1277
kfwhite@cpmas.com
bherrin@cpmas.com

**Bulovic Law Firm, LLC**
Co-counsel to Debtor
1020 Brian Woods Loop
Suite 5
Savannah, Georgia 31410
Telephone: (912) 898-5661

702033v3

Page 23 of  23